# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| EUGENE C. CHIARA, | ) | CASE NO. 1:16CV00230 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Eugene C. Chiara ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his

applications Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI")

under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq.

("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the

undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule

72.2(b) for preparation of a Report and Recommendation.  For the reasons set forth below, the

Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.   PROCEDURAL HISTORY

On August 28 and August 31, 2012, Plaintiff filed applications for DIB and SSI alleging a disability onset date of November 15, 2011 and claiming he was disabled due to anxiety and depression.  (Transcript ("Tr.") 19).  The applications were denied initially (Tr. 150-56) and upon reconsideration (Tr. 161-72), and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 173-75).

On August 28, 2014, the ALJ held a hearing, during which Plaintiff, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 37-88).  On December 24, 2014, the ALJ issued a written decision finding Plaintiff was not disabled.  (Tr. 18-36).  The ALJ' s decision became final on December 1, 2015, when the Appeals Council declined further review.  (Tr. 1-6).

On February 1, 2016, Plaintiff filed his complaint challenging the Commissioner's final decision.  (Doc. No. 1).  The parties have completed briefing in this case.  (Doc. Nos. 9, 10).  Plaintiff asserts the following assignments of error:

(1)  The ALJ failed to properly weigh the medical opinion evidence

(2)  The ALJ failed to properly evaluate Plaintiff's credibility

(Doc. No. 9 at 2).

## II.   EVIDENCE

### A.      Personal and Vocational Evidence

Plaintiff was born in 1959 and was 55 years old at the time of his administrative hearing.  He attended school until the twelfth grade but did not graduate.  (Tr. 44).  He has past relevant work as a warehouse worker.  (Tr. 65, 66-68).

2

**B.      Relevant Medical Evidence**

On November 22, 2011, Plaintiff presented to Cecile Muehrcke, M.D., complaining of worsening anxiety attacks, during which he "can't eat or breathe."  (Tr. 322).  He reported that his anxiety "makes him drink."  (Tr. 322).  He explained that his anxiety was worse "because he was fired due to a confrontation while he was drinking at work."  (Tr. 322).  Dr. Muehrcke noted generalized anxiety disorder with symptoms of restlessness, fatigue, irritability, sleep disturbance, anxious mood, and panic attack.  (Tr. 322).  Dr. Muehrcke noted mild depression present for less than six (6) months.  (Tr. 322).  Plaintiff had no suicidal ideation, and he was tolerating his medication.  (Tr. 322).  Diagnoses consisted of anxiety disorder, hyperlipidemia, and continuous alcohol abuse.  (Tr. 323).  Plaintiff was prescribed Klonopin.  (Tr. 323).

Later that month, during a telephone encounter with Dr. Muehrcke's office, Plaintiff stated that his anxiety is better during the day, but he still cannot sleep at night.  (Tr. 320).  He asked whether his Klonopin dosage might be increased.  (Tr. 320).  His physician indicated that he was already at the highest allowable dose and that more sleep medication was not an option. (Tr. 320).

On May 2, 2012, Plaintiff was seen by V. Dhillon, M.D., seeking a refill of Klonopin. Plaintiff reported that some days he had to take three pills instead of two.  (Tr. 310).  He stated that they "save his life" and he "needs more."  (Tr. 310).  Treatment notes indicate that Plaintiff's "mild depression has been present for less than 6 months." and that his symptoms were well-controlled by medication.  (Tr. 310).  Plaintiff was pleasant, made good eye contact, and had an appropriate mood and affect.  (Tr. 310).  Dr. Dhillon diagnosed anxiety disorder and

alcohol abuse.  (Tr. 311).  Plaintiff was advised to stop drinking alcohol and to follow-up in three months.  (Tr. 311).

In July 2012, Plaintiff presented to Dr. Muehrcke.  Plaintiff noted that he had quit drinking alcohol, but Dr. Muehrcke noted that Plaintiff smelled of alcohol.  (Tr. 312).  Plaintiff reported restlessness, fatigue, irritability, sleep disturbance, anxious mood, and panic attack.  Plaintiff reported that he was seeking disability, but has not seen a psychiatrist.  Plaintiff was doing better with Klonopin.  (Tr. 312).  Dr. Muehrcke noted that Plaintiff's mild depression had been present "for less than 6 months."  (Tr. 312).  He was tolerating his medications, and he was advised to follow-up in six months.  (Tr. 312-13).

On December 4, 2012, Plaintiff was evaluated by psychologist Richard Halas, M.A., at the request of the state agency.  (Tr. 358-362).  Plaintiff denied any current problems with drugs or alcohol, stating that he no longer drinks alcohol and does not abuse drugs, but he noted a previous problem with oxycontin.  (Tr. 359).  Plaintiff denied a psychiatric history, reporting that he does not receive treatment for psychological problems.  (Tr. 359).  Plaintiff admitted that had problems with anxiety and that he previously used alcohol to self-medicate.  (Tr. 359).

He described his physical health as poor.  (Tr. 359).  A mental status exam revealed that Plaintiff was unkempt and disheveled with body odor; his eye contact was poor; he used profanity; and his answers were rambling.  (Tr. 359-60).  He had a hesitant and sullen presentation with no evidence of exaggeration; slow and constricted speech; significant flight of ideas; and tearfulness and crying spells during the examination.  (Tr. 360).  Mr. Halas noted a flat affect, depressed mood, psychomotor retardation, feelings of hopelessness and helplessness,

4

significant sleep disturbance, feelings of guilt, extremely high levels of anxiety with trembling hands during the exam, and poor insight and judgment. (Tr. 359-61).

Mr. Halas diagnosed dysthymia, generalized anxiety disorder, alcohol abuse disorder, and borderline personality disorder with antisocial features. (Tr. 361). Mr. Halas opined that Plaintiff would have minor problems in his ability to understand, remember, and carry out instructions. (Tr. 362). He also opined that Plaintiff had some difficulty with maintaining attention and concentration and in maintaining persistence and pace to perform simple tasks and to perform multi-step tasks. (Tr. 362). Mr. Halas opined that Plaintiff would have significant difficulty with responding appropriately to supervision and co-workers in a work setting, and severe problems responding appropriately to work pressures in a work setting. Mr. Halas also opined that Plaintiff would be unable to manage his own funds. (Tr. 362). Plaintiff was assigned a GAF score of 45.[1] (Tr. 362).

On January 8, 2013, Plaintiff followed-up with Dr. Muehrcke. (Tr. 369). Plaintiff indicated that his "pills don't last all day" and he asked for "meds for intervals between dosages." (Tr. 369). Plaintiff reported that his depression had worsened. (Tr. 369). Dr. Muehrcke recommended that Plaintiff see a psychiatrist. (Tr. 369).

---

[1]The GAF scale reports a clinician's assessment of an individual's overall level of functioning. An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. A score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A recent update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." See Diagnostic and Statistical Manual of Mental Disorders (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

Plaintiff had an evaluation at the Free Clinic of Greater Cleveland on February 18, 2013. (Tr. 383).  Plaintiff reported that he was drinking alcohol to control his anxiety, but he stated that he was not using drugs or alcohol at that time.  (Tr. 383).  Plaintiff reported that Klonopin is not controlling his anxiety, and he requested a prescription for Valium or Xanax.  (Tr. 383).  Plaintiff had a well-groomed appearance, cooperative attitude, average eye contact, overactive motor activity, and rapid speech.  (Tr. 391).  Plaintiff reported suicidal and homicidal ideation.  (Tr. 391).  He showed logical thought process, anxious affect, average intelligence, and no cognitive impairment.  (Tr. 392).  Both cooperative and aggressive behaviors were noted.  (Tr. 392).

On August 29, 2013, Plaintiff had an initial psychiatric evaluation with Elaine Campbell, M.D.  (Tr. 415-420).  Plaintiff had a well-groomed appearance, average eye contact, average activity, and clear speech.  Dr. Campbell observed a circumstantial thought process.  (Tr. 416).  Plaintiff's mood was mildly depressed, mildly anxious, and moderately angry.  (Tr. 416).  He demonstrated full affect and cooperative behavior.  (Tr. 416).  Plaintiff had no cognitive impairment.  Dr. Campbell diagnosed episodic mood disorder, agoraphobia with panic, and drug dependency.  (Tr. 417).  She assigned him a GAF score of 35.  (Tr. 417).

On September 5, 2013, Plaintiff began individual therapy sessions.  (Tr. 423-24).  He had numerous therapy sessions through February 7, 2014.  (Tr. 421-22, 427-28, 425-26, 465-66, 453-54, 463-64, 461-62, 451-52, 459-60, and 457-58).

On October 10, 2013, Plaintiff was seen by Dr. Campbell.  (Tr. 455).  Plaintiff primarily complained of his anxiety but noted that he also suffers from insomnia.  (Tr. 455).  Dr. Campbell remarked that he had a ruminating thought process.  (Tr. 455).  His mood/affect was "less

anxious/less depressed." (Tr. 455). He denied suicidal or homicidal ideation. (Tr. 455). Plaintiff reported that he "got drunk one time." (Tr. 455).

In February 2014, Plaintiff had a counseling session with counselor Caroline Corano. She noted flat affect, fair insight, and that he was seeking support. (Tr. 509). He reported that he was exercising five days a week. (Tr. 509).

Plaintiff presented to Dr. Campbell on March 13, 2014. (Tr. 499). Plaintiff reported that he was sleeping better, but he requested an increase in his sleep medication. (Tr. 499). Dr. Campbell noted that "overall, [Plaintiff is] doing well with managing his anxiety with appropriate use" of medication. (Tr. 499).

Plaintiff met with his counselor Ms. Corano in April 2014. (Tr. 505). Plaintiff reported that he had not used alcohol recently to cope with stress. (Tr. 505). He stated that now he was listening to music and watching  movies to deal with stress. (Tr. 505). Ms. Corano observed that Plaintiff had a positive attitude, and he smiled and the end of the session. (Tr. 505).

Later that month, Plaintiff was seen by counselor Corinne Kacmarek. (Tr. 517). Plaintiff reported understanding that drinking alcohol interfered with his medication, but he stated that he only drinks a few times a month. (Tr. 517). He stated that when he drinks, he gets drunk. (Tr. 517). In May 2014, Plaintiff was seen by Dr. Campbell, and she reviewed his medications, their dosages, and their effectiveness. Plaintiff expressed concern about his ailing mother's health. (Tr. 497). In June 2014, Plaintiff reported to his counselor that he was managing his stress and depression by working out. (Tr. 501).

On July 3, 2014, Dr. Campbell completed a Mental Impairment Questionnaire on behalf of Plaintiff. (Tr. 484). Dr. Campbell noted that she first treated Plaintiff on August 29, 2013;

7

that she most recently examined him on July 3, 2014; and that she had been seeing him once a month.  (Tr. 484).  She assigned a GAF score of 40.  She opined that Plaintiff's diagnoses and limitations were expected to last at least 12 months and that he was not a malingerer.  (Tr. 484). With respect to mood, she opined that Plaintiff suffered from irritable affect, emotional lability, hostility or irritability, and depression.  (Tr. 485).  She further opined that Plaintiff experienced generalized or persistent anxiety, recurrent panic attacks, and vigilance and scanning.  (Tr. 485). She further assessed Plaintiff with social withdrawal or isolation.  (Tr. 485).  And she noted that Plaintiff suffered from insomnia.  (Tr. 485).

Dr. Campbell opined that Plaintiff's most frequent and/or severe symptoms relate to panic attacks and agoraphobia.  (Tr. 486).  Dr. Campbell opined that Plaintiff is markedly limited (defined as symptoms that constantly interfere with an ability – i.e. more than 2/3 of an 8-hr. workday) in his abilities to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule and consistently be punctual; sustain ordinary routine without supervision; work in coordination with or near others without being distracted by them; complete a workday without interruptions from psychological symptoms; perform at a consistent pace without rest periods of unreasonable length or frequency; interact appropriately with the public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them; maintain socially appropriate behavior; adhere to basic standards of cleanliness; respond appropriately to workplace changes, be aware of hazards and take

8

appropriate precautions; travel to unfamiliar places or use public transportation; set realistic goals; and make plans independently.  (Tr. 487).

Dr. Campbell opined that Plaintiff was moderately to markedly limited in his abilities to understand, remember, and carry out one to two-step instructions; and make simple work-related decisions.  (Tr. 487).

Dr. Campbell opined that on average Plaintiff was like to be absent from work more than three times a month as a result of his impairments or treatment.  (Tr. 488).

Plaintiff followed-up with Dr. Campbell in August 2014.  Plaintiff reported feeling more stress as his mother's health had worsened and his son had moved to California.  (Tr. 528).  Dr. Campbell noted that Plaintiff responded positively to support.  (Tr. 528).  Also in August, Plaintiff reported to Ms. Corano that had not been drinking alcohol to cope with his stress, but he had stopped exercising due to his depression.  (Tr. 530).

In September 2014, Plaintiff met with counselor Keysha Conrad.  (Tr. 533).  Plaintiff's attitude toward the meeting was "mild and pleasant."  Plaintiff was reportedly compliant with his medication  (Tr. 533).

**C.      State Agency Opinions**

**1.      Record Review by Karla Voyten, Ph.D.**

On December  18, 2012, Karla Voyten, Ph.D., reviewed Plaintiff's records on behalf of the state agency.  (Tr. 106-115).  She opined that Plaintiff had no understanding and memory limitations, but he had sustained concentration and persistence limitations.  (Tr. 112).  She opined that he had no significant limitation to carry out very short and simple instructions; moderate limitation in the ability to maintain attention and concentration for extended periods;

moderate limitation in the abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; no significant limitation in the ability to sustain an ordinary routine without special supervision; no significant limitation in the ability to work in coordination with or in proximity to others without being distracted by them; and no significant limitation in his ability to make simple work-related decisions.  (Tr. 112).  Dr. Voyten opined that Plaintiff would be moderately limited in completing a normal workday without interruption from his psychological symptoms.  (Tr. 112).

Dr. Voyten further opined that Plaintiff would be moderately limited in his ability to interact appropriately with public, accept instruction, respond appropriately to criticism from supervisors, and respond appropriately to changes in a work setting.  (Tr. 112-13).  She further opined that Plaintiff could perform work that did not require fequent changes in job duties.  (Tr. 133).

### 2.      Record review by Dr. Lewin

On February 14, 2013 Caroline Lewin, Ph.D., reviewed Plaintiff's records on reconsideration.  (Tr. 128-137).  Dr. Lewin determined that the evidence showed that Plaintiff was able to think, communicate, and care for his own needs and that he was able to get along with others, engage in usual daily activities, and remember and follow basic instructions.  (Tr. 137).  Dr. Lewin concurred with the limitations noted by Dr. Voyten, which are described above. (Tr. 134-35).

D.      **Hearing Testimony**

During the hearing, Plaintiff testified to the following:

- He was 55 years old, and he lived by himself in a condominium, which he owns. He maintained his household, did laundry; took care of his dog; and went grocery shopping on Sunday mornings.  (Tr. 53-55).

- Plaintiff drove his car everyday in order to take his dog for a walk.  (Tr. 43).

- He testified that his mother had a cancer diagnosis, and his son had left him to go to California.  (Tr. 44, 52).  Plaintiff claimed to suffer from a great deal of anxiety as a result.

- When asked why he stopped working after many years of steady work as a warehouse worker, Plaintiff explained that he had a "mental breakdown" in 2011.  He testified that he had gotten into a fight at work after drinking a six pack of beer and half a bottle of wine.  According to his testimony, Plaintiff was taken to the hospital where a breathalyser test was administered.  Once at the hospital, Plaintiff threw a chair at two people.  Plaintiff testified that he was not taking medication to treat his anxiety at that time and the alcohol was his method of self-medication.  (Tr. 45-49).

- Plaintiff was fired as a result of the incident.  He testified that he "stayed drunk for about a month" after that.  He testified that he tried to kill himself but he "chickened out at the last minute."  (Tr. 50).

- Plaintiff testified that at the time of the hearing he had not used alcohol in about eight months.  (Tr. 52).

- He testified that he was prescribed Klonopin to cope with his anxiety.  The medication helps, but it will "barely get [him] through the day.  (Tr. 47).  But he said that "it saved [his] life."  He testified that he has trouble just leaving his home and that he has panic attacks every day that last for three to four hours.  (Tr. 57-58).  He described having problems with concentration and attention.  (Tr. 54).

- Plaintiff testified that there were no jobs he could do because he did not like leaving the house.  (Tr. 50).  He said he would not return to his former employer even if "they tripled [his] salary."  (Tr. 50).  Plaintiff said that he did not like interacting with other people.  (Tr. 51).

- He reported occasionally doing his own laundry.  (Tr. 60).  He testified that he sometimes goes a week without showering.  (Tr. 60).

11

- He goes shopping early on Sunday morning, in order to avoid being around people.  (Tr. 50-51, 54).

The VE testified that Plaintiff had past work as a warehouse worker.  (Tr. 65).  The ALJ then posed the following hypothetical question:

> Imagine a hypothetical individual with Mr. Chiara's vocational profile who has no exertional or postural limitations; however, he is limited to routine tasks with no fast-paced work, no strict production quotas, minimal changes in the work setting, and he's further limited to occasional contact with the public, coworkers and supervisors. Given those limitations, would the hypothetical individual be able to perform any of Mr. Chiara's pas work?

(Tr. 68).  The VE testified the hypothetical individual would be able to perform past work as a warehouse worker.  (Tr. 69).  The VE further explained the hypothetical individual would also be able to perform as a general laborer machine shop.  (Tr. 69).

## III.    STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).1

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v.*

12

*Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*  416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

Here, Plaintiff was insured on his alleged disability onset date, November 15, 2011 and will remain insured through December 31, 2016.  (Tr. 19-20).  Therefore, in order to be entitled to POD and DIB, Plaintiff  must establish a continuous twelve month period of disability commencing between these dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant, Eugene Chiara was insured for a period of disability and disability insurance benefits on the November 15, 2011 alleged onset date, and he remains insured for these benefits through December 31, 2016.

2. The claimant has not engaged in any disqualifying substantial gainful activity since the November 15, 2011 alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971et seq.).

3. The claimant has had the following severe impairments since the November 15, 2011 alleged onset: panic disorder with agoraphobia, depressive disorder, and borderline personality disorder with antisocial features (20 CFR 404.1520(c) and 416.920(c)).

4. Since the November 15, 2011 alleged onset date, the claimant has not had an impairment, or a combination of impairments, that has met or medically equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. Since the November 15, 2011 alleged onset date, and with the exception of possible briefer periods of less than 12 continuous months, the claimant has retained the residual functional capacity to perform all the basic work activities described in 20 CFR 404.1521, 404.1545, 416.921 and 416.945 without any exertional or postural limitations within the  following parameters: he can perform routine tasks in jobs that do not have to be performed at a fast-pace and in jobs without strict production quotas so long as there are minimal changes in the work setting and so long as he has no more than occasional contact with members of the public, co-workers and supervisors.

6. Since the November 15, 2011 alleged onset date, the claimant has been capable of performing his past relevant work as a warehouse worker, and his past relevant work as a general laborer in a machine shop, because these jobs do not require the performance of work-related activities precluded by the residual functional capacity he has had since November 15, 2011 (20 CFR 404.1565 and 416.965).

7. The claimant, Eugene Chiara, has not been under a disability, as defined in the Social Security Act, at any time between the November 15, 2011 alleged onset date and the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21-32).

14

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of

choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

**A.**      **First Assignment of Error: Weighing of the Medical Opinion Evidence**

    **1. Treating Physician Rule**

Plaintiff first argues that the ALJ erred by failing to give controlling weight to the medical opinion of Dr. Campbell without providing good reasons.

A treating source opinion must be given "controlling weight" if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2).  However, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.).  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

_____

[2]    Pursuant to 20 C.F.R. § 404.1527(c)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5). *See also Gayheart*, 710 F.3d at 376. The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because of the significance of this requirement, the Sixth Circuit has held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.[3]

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d

---

[3] "On the other hand, opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6)." *Gayheart*, 710 F.3d at 376.

431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581

F.3d at 406.  The ALJ is not bound by conclusory statements of a treating physician that a

claimant is disabled, but may reject such determinations when good reasons are identified for not

accepting them.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of*

*Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383,

391 (6th Cir. 1984).  According to 20 C.F.R. § 404.1527(d)(1), the Social Security

Commissioner makes the determination whether a claimant meets the statutory definition of

disability.  This necessarily includes a review of all the medical findings and other evidence that

support a medical source's statement that one is disabled.  "A statement by a medical source that

you are 'disabled' or 'unable to work' does not mean that we will determine that you are

disabled."  *Id.*  It is the Commissioner who must make the final decision on the ultimate issue of

disability.  *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d

954, 958 n. 1 (11th Cir. 1982).

      In the present case, Plaintiff argues that the ALJ failed to afford the proper deference to

his treating physician, Dr. Campbell who opined that Plaintiff is "totally disabled" (Tr. 482) and

that Plaintiff experienced marked limitations in understanding and memory, concentration

persistence, and social interactions.  (Tr. 29, 487).

      The ALJ evaluated Dr. Campbell's opinion as follows:

> In assessing the claimant's residual functional capacity, the undersigned has also
> considered the opinions of the claimant's psychiatrist, Dr. Campbell, that are found in
> exhibits 9F and lOF. First, and in relation to the opinion in exhibit 9F, the undersigned
> gives no weight to Dr. Campbell's conclusory opinion that the claimant was disabled as
> this is an issue that is reserved to the undersigned and a medical-legal-vocational issue
> that is outside the expertise of Dr. Campbell. The undersigned also rejects the opinions
> that are found in exhibit 1F as not being supported by the longitudinal record including
> the evidence cited in this decision, which includes Dr. Campbell's own records. For

19

example, it was noted on November 11, 2013 that the claimant's anxiety was controlled with medication, and that the claimant had no significant depression.  Similarly, the claimant's depression was described as mild on May 2, 2012.

(Tr. 28-29) (internal citations omitted).

Plaintiff claims that the ALJ erred when he found that Dr. Campbell's opinion was unsupported by the treatment record.  (Doc. No. 9 at 9).  Plaintiff notes that Dr. Campbell based her opinions on evidence of an irritable mood, emotional lability, hostility or irritability, depression, social withdrawal or isolation, generalized or persistent anxiety, recurrent panic attacks, vigilance and scanning, and insomnia.  (Doc. No. 9 at 9).  Plaintiff states that these findings were consistent with treatment records documenting overactive motor activity, rapid speech, paranoid though content, suicidal and homicidal ideations, an anxious affect, and aggressive behavior.  (Tr. 391-92).  Plaintiff also notes record evidence of moderate circumstantial thought processes, moderate anger, and mild depression and anxiety (Tr. 416); ruminations and a less depressed/anxious mood (Tr. 455); a flat affect, only fair insight, and that he was seeking support/validation/assurance (Tr. 499, 505, 509, and 528); and, a depressed and flat affect, fair insight, and that Mr. Chiara was seeking support (Tr. 532); as well as findings from the government's own examining psychologist, Mr. Halas.  (Tr. 359-361).

Although this evidence could support Dr. Campbell's assessment that Plaintiff was markedly impaired in certain respects, the ALJ, as described below, acted within the "zone of choice" when he decided to discount Dr. Campbell's opinion.  Even where there is evidence to support a claimant's position, the decision of the ALJ must stand if other substantial evidence could reasonably support the conclusion reached by the ALJ.  *See Her*, 203 F.3d at 389-90.  Here,

20

notwithstanding the evidence cited by Plaintiff, the ALJ's decision is supported by substantial evidence and the ALJ adequately explained his reasons for discounting Dr. Campbell's opinion.

First, the ALJ did not err when he rejected Dr. Campbell's conclusory assessment that Plaintiff was "totally disabled." The issue of disability is a legal question, the resolution of which is reserved for the Commissioner, not the treating physician. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Thus, the ALJ was not *obligated* to accept Dr. Campbell's assessment of total disability.

Further, the ALJ provided well-supported reasons for otherwise rejecting Dr. Campbell's opinion, stating that Dr. Campbell's opinion is not "supported by the longitudinal record including the evidence cited in this decision, which includes Dr. Campbell's own records." (Tr. 29). In particular, the ALJ cited record evidence showing that Plaintiff had been able to care for his personal needs, walk and care for his dog, drive a car, perform housework, and exercise daily. (Tr. 28 ). The ALJ also pointed out that Plaintiff was able to go shopping and attend Alcoholics Anonymous meetings. (Tr. 28). The ALJ cited evidence that Plaintiff was able to interact adequately with others on numerous occasions. (Tr. 28). For example, treatment notes cited by the ALJ describe Plaintiff's attitude as "cooperative" and his mood and affect as "appropriate." (Tr. 241, 269, 310, 322, 369, 391, 392, 416, 421, 434, 448, 492). The ALJ cites evidence that Plaintiff was "calm, talkative, engaged," and he "smiles and laughs" while sharing (Tr. 467, 477); and that Plaintiff would "enjoy" working at the Horseshoe Casino with his son, if his benefits were denied (Tr. 421). Further, the ALJ cited evidence that Plaintiff did not take his psychotropic medications as prescribed. (Tr. 28). This is evidence that a reasonable person would accept as adequate to support the ALJ's decision to discount Dr. Campbell's opinion.

21

In addition, the ALJ cited Dr. Campbell's own treatment notes indicating that Plaintiff's "[a]nxiety is controlled" and that he has "no significant depression,"  (Tr. 453) and the ALJ also pointed out that another treating physician described Plaintiff's depression as "mild."  (Tr. 310). Plaintiff argues that this evidence, in particular, should not be viewed as inconsistent with Dr. Campbell's opinion.  Plaintiff maintains that because a work environment is completely different from the environment of a home or a mental health clinic, Dr. Campbell's observation that Plaintiff's "anxiety was controlled" while he was in the doctor's office is not inconsistent with her opinion that Plaintiff had severe work-related impairments.

In support, Plaintiff cites to *Morales v. Apfel*, 225 F.3d 310, 319 (3d. Cir. 2000), which held that a treating physician's opinion that a claimant's ability to perform work related functions is seriously impaired is not undermined by treatment records that describe the claimant in an environment that did not include the stresses of a work setting.  Similarly, in a Seventh Circuit case, the court held that "hopeful" remarks in treatment notes indicating that a claimant was doing "fairly well" or "quite well" are insufficient to undermine a treating physician's opinion that a claimant is psychiatrically disabled.  *Bauer v. Astrue*, 532 F.3d 606, 609 (7th cir. 2008).

Here, if Dr. Campbell's observations that Plaintiff's anxiety was under control and that he had "no significant depression" were the only record evidence cited by the ALJ to show that Dr. Campbell's opinion was inconsistent with the record, Plaintiff's argument would, perhaps, have some weight.  However, as noted above, the ALJ cited substantial evidence in addition to Dr. Campbell's remarks, from elsewhere in the record which reasonably undermines Dr. Campbell's opinion.  Unlike *Morales* and *Bauer* there is substantial evidence here that Plaintiff

22

engaged in a variety of activities which are reasonably inconsistent with the severe limitations to which Dr. Campbell opined.

In sum, the ALJ provided adequately supported reasons for affording Dr. Campbell's opinion less than controlling weight.

### 2. The Opinions of the State Agency Reviewers

Plaintiff challenges the ALJ's weighing of the opinions of the state agency reviewers, Drs. Voyten and Lewin. (Tr. 23-25, 28).

Both Dr. Voyten and Dr. Lewin opined that Plaintiff had moderate limitations in social functioning. (Tr. 110, 142). The ALJ determined that these opinions were entitled to great weight because they were supported by the longitudinal record, "which showed that [Plaintiff] has been able to interact adequately with others on numerous occasions" since the alleged onset date. (Tr. 23). The ALJ supported this determination with evidence that Plaintiff would enjoy working at the casino with his son if his benefits were denied; and that Plaintiff was able to attend AA meetings and shop in stores. (Tr. 23).

Drs. Voyten and Lewin determined that Plaintiff was moderately limited in concentration, persistence, or pace. (Tr. 110, 142). The ALJ found that this opinion was also supported by the longitudinal record, because the evidence showed that Plaintiff consistently appeared alert, properly oriented, and capable of concentration. (Tr. 24).

The state agency physicians determined that Plaintiff "could sustain concentration, persistence, and pace for simple 1-2 step tasks." (Tr. 112, 145). The ALJ did not accept this opinion, because he found that the record as a whole did not establish that Plaintiff was only capable of performing tasks with one or two steps. (Tr. 29). The assigned RFC accordingly

23

reflected the opinions of Drs. Voyten and Lewin, except with respect to their opinion that

Plaintiff was only capable of performing simple one to two step tasks.

Plaintiff contends that the state agency reviewers' opinions are not entitled to

"significant weight in the face of well-supporting opinions from a treating doctor."  (Doc. No. 9

at 11).  Plaintiff points out that in *Gayheart*, the Sixth Circuit decided that

> conflicting substantial evidence must consist of more than the medical opinions of the
> nontreating and nonexamining doctors. Otherwise the treating-physician rule would
> have no practical force because the treating source's opinion would have controlling
> weight only when the other sources agreed with that opinion. Such a rule would turn on
> its head the regulation's presumption of giving greater weight to treating sources because
> the weight of such sources would hinge on their consistency with nontreating,
> nonexamining sources.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).

In the present case, the ALJ did not run afoul of *Gayheart's* command that conflicting

substantial evidence must consist of more than the medical opinions of the the nontreating and

nonexamining doctors.  As described *supra* pp. 21-22, the ALJ found that the opinion of

Plaintiff's treating physician Dr. Campbell was inconsistent with substantial evidence in addition

to the reviewers' opinions.

Plaintiff also argues that the ALJ improperly relied on the opinions of the state agency

reviewers because they reviewed a deficient medical record.  Plaintiff points out that Dr. Voyten

reviewed Plaintiff's claim on December 17, 2012, and Dr. Lewin on February 14, 2013.  As such,

Plaintiff argues, the because the state agency reviewers did not have the benefit of the a full

record that included the opinions of Dr. Campbell, the ALJ improperly relied on their opinions.

In *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009), the plaintiff

argued that the ALJ improperly relied on the state agency physicians' opinions because they were

24

out of date and did not account for changes in her medical condition.  The Sixth Circuit reasoned that even though the state agency physicians did not consider the most recent medical evidence, there was no error because the ALJ did consider it.  *Id.*

In the present case, the ALJ did not err when he relied on the opinions of the state agency reviewers.  Plaintiff does not identify any specific evidence that the ALJ failed to consider in deciding the question of Plaintiff's disability, and it is evident that in rendering his decision, the ALJ considered the entire record, including medical records that post-date the opinions of the state agency physicians.  See *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) ("There will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.").

### 3. The opinion of Richard Halas, M.A.

Clinical Psychologist Richard Halas, M.A., opined that Plaintiff would have minor problems with his ability to understand, remember, and carry out instructions, as well as some difficult with maintaining attention, concentration, and persistence and pace for simple tasks. (Tr. 362).  Mr. Halas also opined that Plaintiff would have significant problems in responding appropriately to supervision and to co-workers in a work setting; and that he would have severe problems in responding appropriately to work pressures in a work setting.  (Tr. 362).  The ALJ considered Mr. Halas's opinion and noted that the assigned RFC is "generally consistent with the opinions of Richard Halas, M.A., a consulting psychologist who evaluated the claimant on a sole occasion on December 4, 2012 at the request of the Commissioner."  (Tr. 29)  However, the ALJ

did not incorporate into the RFC Mr. Halas's opinion that Plaintiff would have "severe problems" working full time.  (Tr. 29).

Plaintiff argues that the ALJ improperly weighed Mr. Halas's opinion and failed to provide "reasons for rejecting the opinions from psychologist Halas that are consistent with the treating psychiatrist [Dr. Campbell]."  (Doc. No. 9 at 15).  Stated another way, Plaintiff argues that Dr. Halas's opinion should have been accepted because it is consistent with the opinion of Dr. Campbell.  As already discussed, the ALJ's decision to discount the opinion of Dr. Campbell is supported by substantial evidence.  The ALJ cited to numerous inconsistencies between the record evidence and Dr. Campbell's opinion.  Although Mr. Halas's opinion may have been consistent with Dr. Campbell's opinion in certain respects, this is not grounds for reversal where other substantial evidence supports the ALJ's decision to reject Dr. Campbell's opinion.

**B.      Second Assignment of Error: Credibility of Plaintiff**

When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms.  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment.  Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms."  SSR 96–7p, 1996 WL 374186 (July 2, 1996).

If the allegations are not substantiated by the medical record, the ALJ must make a credibility determination of the individual's statements based on the entire case record. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.

26

*See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight."  SSR 96–7p, Purpose section, 1996 WL 374186 (July 2, 1996); *see also Felisky*, 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so").

To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record.  *See* SSR 96–7p, Purpose, 1996 WL 374186 (July 2, 1996).  Beyond medical evidence, there are seven factors that the ALJ should consider.  The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence.  *See Cross*, 373 F.Supp.2d at 733; *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D. Wis. 2005).  The seven factors are:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96–7p.

In the present case, the ALJ concluded that Plaintiff's allegations of disabling symptoms were not credible as they were not substantiated by the objective medical evidence and the non-medical evidence in the record.  (Tr. 27-28).  In particular, the ALJ noted

the claimant's medical records do not indicate ongoing and significant symptoms since November 15, 2011 that are not accounted for in the assigned residual functional capacity.  Indeed, the claimant was not noted to be in any psychological distress on numerous occasions since November 15, 2011.  . . . [T]he claimant has been described on numerous occasions since November 15, 2011 as being alert and/or properly oriented and/or as having good concentration.  There is also no evidence that the claimant has been treated emergently for a mental a impairment(s), or been psychiatrically hospitalized, at any time since November 15, 2011. Significant and ongoing medications side effects are also not mentioned in the claimant's medical records since November 15, 2011.  There is also no evidence that the claimant's mental functioning has been so poor since November 15, 2011 that it has attracted the attention of law enforcement personnel or civil authorities.

However, there is evidence that the claimant has been able to independently carryout most activities of daily living since November 15, 2011. More specifically, . . . the claimant has been to care for his personal needs, and care for a dog that he takes on walks, and drive motor vehicles and motorcycles, and perform housework, and exercise daily.  The claimant has also been able to shop in stores and attend Alcoholics Anonymous meetings.  The evidence in this case also shows that the claimant has been able to interact adequately with others on numerous occasions since November 15, 2011 The undersigned also notes again that the claimant said on September 19, 2013 that he would like to work at the Horseshoe Casino with his son if he was found not to be disabled; and that the claimant testified that he does not take his psychotropic medications as prescribed which suggests that his problems are not as severe as he has alleged.  The undersigned has also again considered the fact that the claimant testified that he has experienced anxiety attacks for 30 years.  Yet, until he was fired for drinking on the job in November 2011, the claimant was otherwise able to engage in substantial gainful activity despite his anxiety.  In light of the above- described evidence, the undersigned does not find that the claimant has been functioning in a manner depicted by a global assessment of functioning ("GAF") score below 51 over any continuous 12-month period since November  15, 2011.

(Tr. 27-28) (internal citations omitted).

The ALJ's decision shows that he considered all the evidence, and, based on the discussion quoted above, it is evident that substantial evidence supports the ALJ's credibility determination.  Under the substantial evidence standard, this is enough for the Court to affirm the ALJ's decision.  Thus, there is no merit to Plaintiff's argument that the ALJ failed to recognize other substantial evidence that showed the existence of psychiatric abnormalities.  The fact that

28

there may be evidence to support the conclusion opposite that of the ALJ does not change the analysis.

Further, contrary to Plaintiff's contention, the ALJ acknowledged that Plaintiff experienced impairments that could reasonably be expected to cause depression and anxiety. While the ALJ rejected the severe impairments claimed by Plaintiff, the ALJ found that Plaintiff did have some limitations, and he reasonably accounted for Plaintiff's medically determinable impairments, Plaintiff's subjective complaints that could reasonably be expected to have been caused by those impairments, and the medical and non-medical evidence in the record.  The ALJ incorporated those impairments into Plaintiff's RFC.

Plaintiff argues that the ALJ erred: by relying on evidence showing that Plaintiff had never been treated on an emergent basis or hospitalized for psychiatric reasons; by noting that Plaintiff had no medication side effects; by considering the fact that Plaintiff was not involved in any altercations which required intervention by law enforcement; and by considering Plaintiff's ability to engage in certain daily activities.  (Doc. 9 at 14-17).

The ALJ did not err by considering these factors when deciding Plaintiff's credibility. His consideration of medication side effects and Plaintiff's ability to engage in daily activities are explicitly deemed relevant by the regulations.  SSR 96–7p.  In addition, it is relevant that Plaintiff had not been seen emergently for psychiatric reasons subsequent to his 2011 mental breakdown at work.  The fact that Plaintiff did not experience another such episode bears on the credibility of his claim that he suffered from a disabling psychiatric condition.  Similarly, the fact that he had no encounters with law enforcement bears on the same issue.

29

In sum, the ALJ properly addressed and adequately supported his decision with respect to Plaintiff's credibility.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.


  _s/Jonathan Greenberg_____
Jonathan D. Greenberg
United States Magistrate Judge

Date: November 10, 2016

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

30